UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

RICKY D. HENDERSON                                                                    PLAINTIFF

VERSUS                                                        CIVIL ACTION NO. 1:16CV67-RHW

CAROLYN W. COLVIN
Commissioner of Social Security                                                   DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiff Ricky D. Henderson filed a complaint seeking review of the Commissioner's decision denying his claim for disability insurance benefits. Henderson filed an application for disability benefits on March 6, 2013, alleging an onset date of September 1, 2010. He alleged disability due to bipolar disorder, personality disorder, and back injuries. Henderson's insured status expired on December 31, 2013. *See Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985)(noting that claimant must show disability prior to the date insured status expires). The Commissioner denied Henderson's application at the initial level and on reconsideration. Henderson requested and was granted a hearing before an Administrative Law Judge (ALJ). The ALJ conducted a hearing on May 14, 2014, and issued a decision on July 16, 2014, finding that Henderson was not disabled during the relevant time frame. The Appeals Council denied Plaintiff's request for review. Henderson then filed the instant lawsuit arguing that (1) the ALJ failed to assign controlling weight to his treating physicians: Dr. Angela Burt and Dr. Brian Tsang; and (2) the ALJ failed to fully develop the record because he did not order a consultative orthopedic and consultative psychological examination.

Plaintiff was 37-years old at the time of the ALJ hearing. He possesses a college degree

and has past relevant work as a construction laborer, surgical assistant, and registered nurse. Based on a review of Henderson's testimony and the medical evidence of record, the ALJ concluded that he had severe impairments of affective/mood disorder; polysubstance dependence; personality disorder; disorder of the back; and obesity. Doc. [8] at 19. The ALJ further concluded that Henderson possessed the following residual functional capacity (RFC): lift, carry, push, pull 20 pounds occasionally or 10 pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally climb, stoop, and crawl; ability to understand, remember, and carry out simple and/or detailed, but not complex tasks or instructions; ability to sustain concentration, attention, and persistence for two-hour periods; ability to interact at least frequently with supervisors and coworkers, and occasionally with the general public; and ability to respond appropriately to workplace changes. *Id.* at 23. Based on these limitations, the ALJ concluded that Henderson was unable to perform his past relevant work; however, ALJ found that there were jobs that existed in significant numbers in the national economy that Henderson could have performed. *Id.* at 30-31.

## Law and Analysis

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988).  "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).  While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

      A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment.  42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5).  The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a), § 404.920(a).  Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work.  *Id.*

      The claimant initially bears the burden of proving disability under the first four steps, but

the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he cannot perform this alternative employment. *Id*.

**Treating Physicians**

Henderson argues that the ALJ should have given controlling weight to his treating physicians. The opinion of a claimant's treating physician should be accorded great weight in determining disability. *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005); *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). The treating physician's opinion on the nature and severity of impairments will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Newton*, 209 F.3d at 455. Before declining to give controlling weight to a treating physician, the ALJ must consider the factors set forth at 20 C.F.R. § 404.1527(d)(2): (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)." *Newton*, 209 F.3d at 453 (emphasis in the original). The ALJ is free to assign little or no weight to the

opinion of any physician for good cause.  *Newton*, 209 F.3d at 455-56.  Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the physician's evidence is conclusory; is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; or is otherwise unsupported by the evidence.  *Id.*  A treating physician's opinion may be rejected when the evidence supports a contrary conclusion.  *Martinez*, 64 F.3d at 176.

In *Newton* the Fifth Circuit held "that an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton*, 209 F.3d at 456.  However, where there is reliable medical evidence from a treating or examining physician that controverts the treating specialist, the detailed inquiry is not necessary.  *See Rollins v. Astrue*, 464 Fed. App'x 353, 358 (5th Cir. 2009); *Franzen v. Astrue*, 555 F.Supp.2d 720, 737 (W.D.Tex. 2008).  In this case, the ALJ did not give controlling weight to the Dr. Burt or Dr. Tsang.  Rather, the ALJ gave "little weight" to the treating physicians.  However, the ALJ also gave "little weight" to the state agency medical consultants and did not weigh the opinions of any other treating or examining physicians.  Hence, there is no competing, first hand medical evidence that contradicts the findings of Dr. Burt or Dr. Tsang.  Nevertheless, the Court finds that the ALJ was not required to conduct a detailed analysis of the six factors under § 404.1527(d), because the ALJ did not decline to give any weight to Dr. Burt or Dr. Tsang.  *See Newton*, 209 F.3d at 456; *Hodges v. Colvin*, 2015 WL 10552243, at *14 (E.D.La. Oct. 15, 2015).  To the contrary, he gave some weight to their opinions, and certainly weighed them more heavily than the opinions of the state agency consultants who found that Henderson suffered no severe impairments.  The ALJ credited the treating physicians opinions to

the degree that he found Henderson to have severe impairments relating to both his mental and physical conditions.

The ALJ provided good cause not to give controlling weight to the treating physicians with respect to Henderson's RFC.  Specifically, with respect to Henderson's mental limitations, the ALJ found that Henderson had a history of irregular treatment and routine noncompliance with treatment recommendations.  The ALJ also noted that Dr. Burt failed to cite mental limitations documented in her treatment records to support her assessment.  Finally, the ALJ noted that Dr. Burt's assessment with respect to mental limitations was completed after Henderson's date of last insured.  Doc. [8] at 30.  With regard to Dr. Tsang, the ALJ found that Dr. Tsang failed to cite functional limitations or objective findings to support the severity of Henderson's subjective pain complaints; that Dr. Tsang's assessment appeared to be based primarily on subjective complaints rather than objective findings; and that Dr. Tsang failed to reference Henderson's chronic history of opiate abuse and dependency.  *Id.*

**Additional Consultative Examinations**

Henderson also argues that the ALJ did not fully develop the record because he discredited the opinions of Dr. Burt and Dr. Tsang without ordering consultative orthopedic and psychological examinations.  "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits."  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  If the ALJ does not satisfy this duty, his decision is not substantially justified.  *Id.*  Reversal is only appropriate if the applicant shows that he was prejudiced.  *Id.*  Prejudice is "established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence *might* have led to a different decision."  *Id.* at 557 n.22.

6

Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing. *Id.* at 557. The absence of such a statement does not in itself make the record incomplete. *Id.* In such a situation, the Court's inquiry focuses on whether the ALJ's decision is supported by substantial evidence in the existing record. *Id.* However, where the medical opinion evidence does not establish the effect of a claimant's condition on his ability to work, remand may be appropriate. *See id.* at 557-58.

Here, the evidence of record established and the ALJ found that Henderson had severe impairments. The ALJ essentially discounted the opinions of all of the medical experts regarding the effect of these impairments on Henderson's ability to work, including the opinions of the Henderson's treating physicians. *See Williams* 355 Fed. App'x at 832 ("ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley*, 67 F.3d at 557-58; *Butler v. Barnhart*, 99 Fed. App'x 559, 560 (5th Cir. 2004)("ALJ failed to show good cause for rejecting the opinions of all the physicians who treated and/or examined Butler with respect to her residual functional capacity."). The ALJ did not entirely disregard the opinions of Dr. Burt and Dr. Tsang. With respect to mental limitations, the ALJ agreed that Henderson suffered severe impairments. The ALJ accounted for these severe impairments by restricting Henderson to jobs that only required the ability to understand, remember, and carry out simple and/or detailed, but not complex, tasks or instructions; the ability to sustain concentration, attention, and persistence for two-hour periods; and the ability to interact frequently with supervisors and co-workers, but only occasionally with the general public. Doc. [8] at 23. With respect to Henderson's exertional limitations, the ALJ concluded that Henderson had a severe back disorder and obesity, and therefore limited Henderson to light

work. *Id.*

Nevertheless, the ALJ relied on other substantial evidence in the existing record to support his assignment of limitations. *See Ripley*, 67 F.2d at 557. Based on Henderson's testimony that he worked for most of 2012, the ALJ found that Henderson demonstrated an ability to work during the relevant period. Doc. [8] at 25, 47-48. In fact on November 28, 2012, Henderson reported to Dr. Tsang that he started a new job and that his "daily activities are normal without limitations." *Id.* at 529. Henderson also reported attending medical college to study anesthesia during the relevant period. *Id.* at 25, 525, 533. Other than the discounted questionnaires submitted by Henderson's treating physicians after the period of disability, the ALJ noted the absence of medical evidence documenting major limitations in sitting, standing, or walking; as well as an absence of medical evidence documenting mental limitations consistent with Henderson's testimony. *Id.* at 25. The ALJ found that Henderson exhibited intermittent treatment for his conditions and non-compliance with treatment recommendations. *Id.* at 25, 294, 477-78, 648. For example, the ALJ found that there was no mental health treatment for over a year after the alleged onset of disability. *Id.* at 25. There was only one treatment note regarding treatment for his back surrounding and subsequent to the alleged onset date of disability. *Id.* at 27. There were large gaps between Henderson's doctor visits. *Id.* The ALJ also recited medical evidence that reported improvement with treatment and the lack of significant abnormalities during physical examinations. *Id.* at 27, 378-79, 424-25, 437, 558, 598, 649-50. For example, Dr. Terry Smith reported in March 2012 normal strength, reflexes, sensation, and gait, with only mild tenderness of the lower back. *Id.* at 28, 556. In late 2012 early 2013, Henderson reported that he had back pain but his medications were working and

helping his pain. *Id.* at 28, 518, 522, 529. Examinations during this time frame continued to be generally normal, without any significant abnormalities of the back; and Plaintiff displayed normal sensation, motor strength and gait. *Id.* at 28, 424-26, 431-39, 527, 531, 534-35, 539, 542, 556, 598. The ALJ also noted that Henderson's GAF scores generally improved when Henderson was compliant with treatment recommendations and medication regimen. *Id.* at 29, 274, 588. Accordingly, the Court finds that the ALJ's RFC determination was supported by other substantial evidence in the record.

The Court also finds that Henderson cannot demonstrate the requisite prejudice to justify remand. It is undisputed that Henderson's insured status expired on December 31, 2013. Henderson argues that the ALJ should have ordered consultative examinations; however, the consultative examinations would have occurred in 2014, after Henderson's insured status expired. Hence additional consultative examinations would be unlikely to produce relevant medical opinion evidence regarding Henderson's condition during the period of Henderson's insured status. *See* 20 C.F.R. § 404.1519b(c)("we will not purchase a consultative examination . . . when your insured status has expired and there is no possibility of establishing an onset date prior to the date your insured status expired"); *Walton v. Colvin*, 2013 WL 2659658, at *4 & n.6 (D.Ore. June 10, 2013)(explaining that consultative examination could not be ordered more than eight months after date of last insured); *Merced v. Astrue*, 2012 WL 1110599, at *8 (D.P.R. Mar. 30, 2012)(finding that consultative examination likely would have been fruitless nearly three years after plaintiff's insured status had expired). Thus the Court finds that Henderson cannot demonstrate prejudice resulting from the ALJ's failure to order post-insured status consultative examinations. *See Ripley*, 67 F.3d at 557.

IT IS THEREFORE ORDERED AND ADJUDGED that the decision of the Commissioner is AFFIRMED.

SO ORDERED, this the 3rd day of February, 2017.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE